# EXHIBIT

# "A"

**SUMMONS**

| | |
|---|---|
| District Court: SIXTH JUDICIAL DISTRICT<br>Grant County, New Mexico<br>Court Address: 201 North Cooper Street, Silver<br>City, New Mexico 88061<br>Court Telephone Number: 575-538-3250 | Case Number: D-608-CV-2021-305<br><br>Judge: JIM FOY<br><br>DIVISION III |
| Plaintiff: RUBEN J. ESCANO<br>v.<br>Defendants: HOLIDAYS NETWORK GROUP,<br>LLC; and JORGE BRAVO; and DOES 1<br>through 100. | Defendant<br><br>Name: HOLIDAYS NETWORK GROUP,<br>LLC<br>Address: 558 West New England Avenue,<br>Suite 210, Winter Park, Florida 32789 |

## TO THE ABOVE-NAMED DEFENDANTS: Take notice that

1.      A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA.) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at Silver City, New Mexico, this 23 day of December, 2021.

CLERK OF COURT

By: _____

Deputy

*[SEAL: SIXTH JUDICIAL DISTRICT COURT CLERK, GRANT COUNTY, STATE OF NEW MEXICO]*

Pro Se Plaintiff Name: Ruben J. Escano
Address: 2311 Ranch Club Road,
Suite #2-180, Silver City, NM 88061
Telephone No.: 201-527-8938
Email Address: rubenescano@gmail.com

STATE OF NEW MEXICO
COUNTY OF GRANT
SIXTH JUDICIAL DISTRICT

FILED
DISTR... COURT ...
GRANT COU...

2021 DEC 23 PM 2: 55

RUBEN J. ESCANO;

    Plaintiff;

v.

HOLIDAYS NETWORK GROUP, LLC; and
JORGE BRAVO; and DOES 1 through 100;

    Defendants.

Case No. D-608-CV-2021- 305

Judge Fay

JURY TRIAL OF TWELVE DEMAND

## COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

    **COMES NOW**, Ruben J. Escano and for his causes of action against the Defendants **STATES** and **ALLEGES**:

### Nature of the Case

    1.    This civil action is brought forth pursuant to the United States Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* to, *inter alia*, recover statutory damages for, and enjoin, automatically-dialed and unsolicited telemarketing calls.

    2.    All of the telemarketing calls began with deceptive pre-recorded messages, typified by one such message: "Thank you for choosing Marriott Hotels!  We would like to inform you that your confirmation number was drawn and you are entitled to receive a complimentary stay!"

    3.    In enacting the TCPA, "Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes.'" *Mims v. Arrow Fin.*

*Servs., LLC*, 565 U.S. 368 (2012) at *3 (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)) (alterations in original).

## The Parties

4.      Plaintiff RUBEN J. ESCANO is an individual and resident of Silver City, New Mexico, with a mailing address of 2311 Ranch Club Road, #2-180, Silver City, New Mexico 88061.

5.      Defendant HOLIDAYS NETWORK GROUP, LLC (hereinafter, "HNG") is a limited liability company with a principal address of 558 West New England Avenue, Suite 210, Winter Park, Florida 32789. Its registered agent is the Law Office of M.A. Stone, LLC at the address of 14142 Amelia Island Way, Orlando, Florida 32828.

6.      Defendant JORGE BRAVO is an individual with an address of 303 Merlin Way, Plantation, Florida 33324. He is a member and manager of HNG.

7.      Defendant DOES 1 through 100 are individuals or entities that are directly or vicariously liable for the causes of action alleged herein, but whose identities or liabilities are not yet fully known. Mr. Escano reserves the right to amend this complaint once information arises to properly implicate these parties in the causes of actions alleged herein. These parties may include principals, agents, and employees of HNG and Mr. Bravo. Such parties may include resorts and resort timeshare companies.

## Jury Demand

8.    A trial by jury of twelve on all claims is hereby demanded.

## Jurisdiction

9.    Mr. Escano is a resident of New Mexico and was in New Mexico at the time a substantial number of the communications described herein were received.

10.    The Defendants relied on and availed themselves of the telecommunications infrastructure of New Mexico when transmitting the calls in question.

11.    Defendants offer and market their products or services to residents of New Mexico using means which they know could reach residents of New Mexico.

12.    This state court has jurisdiction over Defendants pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5).

## Causes of Action

### Introduction

13.    Beginning on or about February 8, 2018 and continuing to January 20, 2021 or about that date, HNG, Mr. Bravo, and Defendant DOES 1 through 100, initiated at least twenty-seven automatically-dialed and unsolicited telephone calls (hereinafter, "the calls") to Mr. Escano's cellular telephone, ending in -8938.

14.    Mr. Escano's telephone number is on the Federal Communication Commission's "National Do Not Call" list.

15.     During at least four of the calls, including the very first call on February 8, 2018, Mr. Escano told an HNG phone representative that Mr. Escano did not want to be called again. All four times, he requested that his phone number be placed on an internal "do not call" list.

16.     Undeterred, HNG continued calling Mr. Escano.

17.     All of the calls were made in an attempt to sell vacation packages and timeshares for hotels and resorts in Kissimmee, Florida, or in or near Cancun, Mexico.

18.     Throughout all causes of action alleged herein, HNG and Mr. Bravo acted as agents of each other.  Mr. Bravo also acted as an employee of HNG.

19.     The calls began with various pre-recorded messages deceptively announcing the calls as coming from "Marriott Hotels," "Hyatt Hotels," "Hilton Hotels," "Disney World," or "Booking.com."

20.     In addition to the pre-recorded message alleged in ¶ 2—which commenced a preponderance of the calls—other pre-recorded messages stated, for example:

    a) "This is an exclusive announcement from Hyatt Hotels!  Your telephone number has been pre-selected to receive a complimentary stay in one of our five-star hotels!"

    b) "Congratulations!  You have been pre-selected by Booking.com to receive a $999 credit toward your next vacation!"

    c) "Thank you for choosing Hilton Hotels!  We would like to inform you that your booking number was chosen for a complimentary stay!"

21.     All of the pre-recorded messages were made with the same person's voice and with similar, excited intonations and cadence.

22.    None of the companies that own such trademarks actually transmit calls with such pre-recorded messages.  To the contrary, Marriot International, Inc., the owner of the "Marriott" trademark, has filed a trademark-infringement lawsuit against "John Doe" defendants who are initiating calls with such pre-recorded messages. *See Marriott International, Inc. v. John Does 1–10*, No. 1:21-cv-00610 (E.D. Va.).

23.    The content of all of the calls in the instant case, and their associated pre-recorded messages, was substantially similar enough that a reasonable person would identify the communications as coming from the same entity.

24.    The calls were unwarranted invasions of Mr. Escano's privacy that required him to divert attention away from his work and personal life to tend to and answer such intrusions of his time.

25.    During the calls, Defendants violated at least seven distinct prohibitions, proscribed by the TCPA, at least 163 times, specifically: 47 U.S.C § 227(b)(1)(A)(iii), § 227(b)(1)(B), § 227(b)(1)(D),      47 C.F.R. § 64.1200(a)(7)(i),      § 64.1200(b)(1),      § 64.1200(b)(2),      and § 64.1200(c)(2).

## Relevant Facts

26.    None of the Defendants have an established business relationship with Mr. Escano.

27.    The calls to Mr. Escano were initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

28.    Additionally, none of the Defendants have received from Mr. Escano any prior express invitation or permission to call Mr. Escano.

29.     Accordingly, the calls meet the definition of a "telephone solicitation" under 47 U.S.C. § 227(a)(4).

30.     In transmitting the calls to Mr. Escano, Defendants utilized equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers—or such effectively-similar equipment.

31.     Accordingly, the equipment utilized was an "automatic telephone dialing system" (hereinafter, "ATDS") as defined by 47 U.S.C. § 227(a)(1).

### Holidays Network Group

32.     HNG operates call centers and conducts outbound telemarketing.

33.     HNG sells vacation packages and resort timeshares via telephone.

34.     TrackResults, a company from which HNG buys timeshare customer relationship management software, says that, "Holidays Network Group in Florida is expanding its use of TrackResults to capture valuable data on its *outbound marketing and call center operations*." *Client Growth*, TrackResults, https://www.trackresults.com/trackresults-client-growth, archived at https://perma.cc/NY4M-ZVRV (emphasis added).

35.     HNG transmitted some of the calls from a call center in or near Orlando, Florida, and transmitted other calls from a call center in or near Cancun, Mexico.

36.     HNG operates a call center in or near Orlando, Florida.

37.     HNG operates a call center in or near Cancun, Mexico.

38.     HNG provides training to call center employees located in or near Cancun, Mexico.

39.     During the April 3, 2018 call alleged *infra*, an HNG phone representative told Mr. Escano that she was calling from Orlando, Florida. She also transferred Mr. Escano to an HNG sales agent who said he was located in Cancun, Mexico.

40.     On behalf of HNG, Mr. Bravo entered into agreements with resorts and resort timeshare companies to transmit telemarketing calls, which included the calls in question.

41.     During the period of time in question, HNG transmitted automatically-dialed telemarketing calls to telephone subscribers across the country, including Mr. Escano, en-masse and in a non-targeted fashion.

42.     HNG initiated the calls to Mr. Escano.

43.     Accordingly, HNG is directly liable for the calls.

44.     Mr. Bravo directed HNG employees to place the calls, in the manner as alleged in the counts *infra*, and controlled such employees throughout and at all times during the counts *infra*.

45.     Mr. Bravo manifested assent to his right to control the HNG employees.

46.     Accordingly, Mr. Bravo is vicariously liable for the calls under the theory of respondeat superior.

### Spoofed Phone Numbers

47.     During the calls, HNG attempted to avoid legal reproach by spoofing the phone numbers from which it called so that Mr. Escano's cell phone, and any other telephones called, would show inaccurate caller ID information, and by instructing its employees not to immediately communicate the true name of the company calling even when Mr. Escano, and any other telephone subscribers that were called, inquired as to the true name of the company.

48.     One of the phone numbers that HNG spoofed happened to belong to Johnson &

Johnson—the manufacturer of one of the COVID-19 vaccines authorized by the FDA, through an

Emergency Use Authorization, during the ongoing global COVID-19 pandemic which has killed

over 800,000 Americans.

49.     During the December 21, 2020 call alleged *infra*, HNG spoofed Johnson &

Johnson's phone number of 908-541-3210.

50.     Because HNG spoofed a phone number belonging to Johnson & Johnson, the caller

ID of Mr. Escano's cell phone erroneously indicated that the call was from "Johnson and Johnson."

As a result of HNG spoofing Johnson & Johnson's phone number, Mr. Escano thought the call

was an important medical message regarding his eligibility for a COVID-19 vaccine, which had

just begun to be distributed to the public.

51.     Instead, Mr. Escano was met with a pre-recorded message from HNG purporting

to be from "Marriott Hotels."

### Mexican Riviera Resorts Unlimited and Calypso Cay Resorts

52.     Although the calls began with pre-recorded messages announcing the calls as

coming from well-known hotel brands, such as "Marriott" and "Hyatt," the HNG phone

representatives to whom Mr. Escano spoke during the calls, attempted to sell Mr. Escano vacation

packages at other unrelated hotels and resorts.

53.     All of the vacation packages that the HNG phone representatives attempted to sell

to Mr. Escano were for stays at either the Calypso Cay Resort, located in Kissimmee, Florida, or

hotels and resorts operating under the Sunset World Group brand, including "Laguna Suites Golf

and Spa Hotel" and "Ocean Spa Hotel," located in or near Cancun, Mexico.

54.     Sunset World Group is a group of hotels and resorts in Mexico operating under the common ownership of a company called Mexican Riviera Resorts Unlimited S.A. de C.V., CO.

55.     During the April 3, 2018 call, and because that call began with a pre-recorded message announcing the call as coming from "Marriott Hotels," Mr. Escano attempted to determine the true provenance of the call. To that end, Mr. Escano gave his credit card information to a phone representative who said he was located in Cancun, Mexico. The phone representative charged Mr. Escano's credit card for a vacation package and provided Mr. Escano with a customer service phone number.

56.     Mr. Escano's credit card statement showed a subsequent charge from "MXRRU."

57.     "MXRRU" is an abbreviation for Mexican Riviera Resorts Unlimited S.A. de C.V., CO (hereinafter, "Mexican Riviera Resorts").

58.     Only two days after the April 3, 2018 call, on April 5, 2018, Mr. Escano called the customer service phone number that was provided to him by the phone representative from the April 3, 2018 call. During the call to the customer service phone number, Mr. Escano clearly and unequivocally told a customer service agent that he did not wish to be called again and that he did not have any interest in any vacation packages. He also requested that the credit card charge be refunded.

59.     The customer service agent did not refund the credit card charge.

60.     Mr. Escano had to file a dispute with his credit card company who refunded the charge.

61.     HNG conducts outbound telemarketing for Calypso Cay Resorts and Mexican Riviera Resorts.

62.     The TCPA and its prohibitions apply, inclusively, to telemarketing calls transmitted from outside the United States. *See* 47 U.S.C § 227(b)(1).

### The Calls and The Requests to Stop Calling

63.     On February 8, 2018, Defendants called Mr. Escano from the phone number 201-521-5415.

64.     During that February 8, 2018 call, Mr. Escano clearly and unequivocally told an HNG phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

65.     On April 3, 2018, Defendants called Mr. Escano from the phone number 201-528-7816.

66.     On April 16, 2018, Defendants called Mr. Escano from the phone number 201-529-3292.

67.     On April 23, 2018, Defendants called Mr. Escano from the phone number 201-528-1389.

68.     On May 1, 2018 Defendants called Mr. Escano from the phone number 201-526-8696.

69.     During that May 1, 2018 call, Mr. Escano clearly and unequivocally told an HNG phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

70.     On May 3, 2018 Defendants called Mr. Escano from the phone number 201-525-8022.

71.     During that May 3, 2018 call, Mr. Escano clearly and unequivocally told an HNG phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

72.     On May 8, 2018, Defendants called Mr. Escano from the phone number 201-528-1795.

73.     On May 14, 2018 at about 4:33 pm, Defendants called Mr. Escano from the phone number 201-528-1795.

74.     Again on May 14, 2018, at about 7:41 pm, Defendants called Mr. Escano from the phone number 201-524-4967.

75.     On January 29, 2019, Defendants called Mr. Escano from the phone number 201-713-1987.

76.     On February 18, 2019, Defendants called Mr. Escano from the phone number 201-762-8638.

77.     On May 1, 2019, Defendants called Mr. Escano from the phone number 201-714-2552.

78.     On June 3, 2019, Defendants called Mr. Escano from the phone number 201-843-1285.

79.     On June 4, 2019, Defendants called Mr. Escano from the phone number 201-272-7944.

80.     On July 4, 2019, Defendants called Mr. Escano from the phone number 201-301-4631.

81.     On August 19, 2019, Defendants called Mr. Escano.

82.     On September 10, 2019, Defendants called Mr. Escano from the phone number 201-639-9685.

83.     During that September 10, 2019 call, Mr. Escano clearly and unequivocally told an HNG phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

84.     On June 24, 2020, Defendants called Mr. Escano from the phone number 862-232-8428.

85.     On August 24, 2020, Defendants called Mr. Escano.

86.     On September 30, 2020, Defendants called Mr. Escano.

87.     On October 13, 2020, Defendants called Mr. Escano from the phone number 201-284-1653.

88.     On December 2, 2020, Defendants called Mr. Escano from the phone number 201-768-7529.

89.     On December 10, 2020, Defendants called Mr. Escano from the phone number 973-617-3239.

90.     On December 21, 2020, Defendants called Mr. Escano from the phone number 908-541-3210.

91.     On January 4, 2021, Defendants called Mr. Escano.

92.     On January 6, 2021, Defendants called Mr. Escano from the phone number 973-776-5650.

93.     On January 20, 2021, Defendants called Mr. Escano from the phone number 908-478-6380.

94.     For all 163 counts *infra*, all preceding paragraphs are incorporated by reference to each of them.

## Counts

### Counts 1 to 27

### Violations of 47 USC § 227(b)(1)(A)(iii): Utilizing an ATDS to transmit a telephone call to a cell phone.

95.     On or about February 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

96.     On or about April 3, 2018 HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

97.     On or about April 16, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

98.     On or about April 23, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

99.     On or about May 1, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

100.    On or about May 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

101.    On or about May 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

102.    On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

103. Again, on or about May 14, 2018, at or about 7:41 pm, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

104. On or about January 29, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

105. On or about February 18, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

106. On or about May 1, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

107. On or about June 3, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

108. On or about June 4, 2019 HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

109. On or about July 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

110. On or about August 19, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

111. On or about September 10, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

112. On or about June 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

113. On or about August 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

114.     On or about September 30, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

115.     On or about October 13, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

116.     On or about December 2, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

117.     On or about December 10, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

118.     On or about December 21, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

119.     On or about January 4, 2021, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

120.     On or about January 6, 2021, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

121.     On or about January 20, 2021, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

### Counts 28 to 54

**Violations of 47 USC § 227(b)(1)(B): Utilizing an artificial or prerecorded voice to deliver a message to a telephone.**

122.     On or about February 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

123.    On or about April 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

124.    On or about April 16, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

125.    On or about April 23, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

126.    On or about May 1, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

127.    On or about May 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

128.    On or about May 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

129.    On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

130.    Again, on or about May 14, 2018, at or about 7:41 pm, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

131.    On or about January 29, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

132.    On or about February 18, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

133.    On or about May 1, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

134.    On or about June 3, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

135.    On or about June 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

136.    On or about July 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

137.    On or about August 19, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

138.    On or about September 10, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

139.    On or about June 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

140.    On or about August 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

141.    On or about September 30, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

142.    On or about October 13, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

143.    On or about December 2, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

144.    On or about December 10, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

145.    On or about December 21, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

146.    On or about January 4, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

147.    On or about January 6, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

148.    On or about January 20, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

### Counts 55 to 81

### Violations of 47 USC § 227(b)(1)(D): Utilizing an ATDS in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.

149.    On or about February 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

150.     On or about April 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

151.     On or about April 16, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

152.     On or about April 23, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

153.     On or about May 1, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

154.     On or about May 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

155.     On or about May 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

156.     On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

157.     Again, on or about May 14, 2018, at or about 7:41 pm, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone

in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

158.    On or about January 29, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

159.    On or about February 18, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

160.    On or about May 1, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

161.    On or about June 3, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

162.    On or about June 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

163.    On or about July 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

164.    On or about August 19, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

165.    On or about September 10, 2019, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

166.    On or about June 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

167.    On or about August 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

168.    On or about September 30, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

169.    On or about October 13, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

170.    On or about December 2, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

171.    On or about December 10, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

172. On or about December 21, 2020, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

173. On or about January 4, 2021, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

174. On or about January 6, 2021, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

175. On or about January 20, 2021, HNG and Mr. Bravo willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

### Count 82

**Violations of 47 CFR § 64.1200(a)(7)(i): Allowing a more than two-second delay before responding to answered call.**

176. On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

### Counts 83 to 109

**Violations of 47 CFR § 64.1200(b)(1): Transmitting a telephone call with an artificial or prerecorded message which does not state the identity of the business calling.**

177.    On or about February 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

178.    On or about April 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

179.    On or about April 16, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

180.    On or about April 23, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

181.    On or about May 1, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

182.    On or about May 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

183.    On or about May 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

184.     On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

185.     Again, on or about May 14, 2018, at or about 7:41 pm, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

186.     On or about January 29, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

187.     On or about February 18, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

188.     On or about May 1, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

189.     On or about June 3, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

190.     On or about June 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

191.    On or about July 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

192.    On or about August 19, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

193.    On or about September 10, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

194.    On or about June 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

195.    On or about August 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

196.    On or about September 30, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

197.    On or about October 13, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

198.    On or about December 2, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

199.    On or about December 10, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

200.    On or about December 21, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

201.    On or about January 4, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

202.    On or about January 6, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

203.    On or about January 20, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the true identity of the business calling.

### Counts 110 to 136

**Violations of 47 CFR § 64.1200(b)(2): Transmitting a telephone call with an artificial or prerecorded message which does not state the telephone number of the business calling.**

204.    On or about February 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

205.    On or about April 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

206.    On or about April 16, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

207.    On or about April 23, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

208.    On or about May 1, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

209.    On or about May 3, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

210.    On or about May 8, 2018, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

211.    On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

212.    Again, on or about May 14, 2018, at or about 7:41 pm, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

213.    On or about January 29, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

214.    On or about February 18, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

215.    On or about May 1, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

216.    On or about June 3, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

217.    On or about June 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

218.     On or about July 4, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

219.     On or about August 19, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

220.     On or about September 10, 2019, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

221.     On or about June 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

222.     On or about August 24, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

223.     On or about September 30, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

224.     On or about October 13, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

225.    On or about December 2, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

226.    On or about December 10, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

227.    On or about December 21, 2020, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

228.    On or about January 4, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

229.    On or about January 6, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

230.    On or about January 20, 2021, HNG and Mr. Bravo willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

### Counts 137 to 163

**Violations of 47 CFR § 64.1200(c)(2): Calling a telephone number registered on the national do-not-call registry.**

231.    On or about February 8, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

232.    On or about April 3, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

233.    On or about April 16, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

234.    On or about April 23, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

235.    On or about May 1, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

236.    On or about May 3, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

237.    On or about May 8, 2018, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

238.    On or about May 14, 2018, at or about 4:33 pm, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

239.    Again, on or about May 14, 2018, at or about 7:41 pm, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

240.    On or about January 29, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

241.    On or about February 18, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

242.    On or about May 1, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

243.    On or about June 3, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

244.    On or about June 4, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

245. On or about July 4, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

246. On or about August 19, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

247. On or about September 10, 2019, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

248. On or about June 24, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

249. On or about August 24, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

250. On or about September 30, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

251. On or about October 13, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

252.   On or about December 2, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

253.   On or about December 10, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

254.   On or about December 21, 2020, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

255.   On or about January 4, 2021, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

256.   On or about January 6, 2021, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

257.   On or about January 20, 2021, HNG and Mr. Bravo willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A. pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(c)(5)(B), statutory damages for each of the at least 163 violations of the TCPA committed by Defendants;

B. pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5), trebling of the damages for each of the willful or knowing violations;

C. for punitive damages sufficient to punish Defendants for their attempts to avoid legal reproach;

D. pursuant to 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5)(A), for an injunction ordering Defendants to cease their telemarketing calls to Plaintiff;

E. for Plaintiff's attorney's fees and costs;

F. for pre and post-judgment interest;

G. and for all other relief to which Plaintiff is entitled under New Mexico law.


Dated this 23rd day of December, 2021.


Respectfully Submitted,


By: _____

**Ruben J. Escano**, *pro se*

2311 Ranch Club Road
Suite #2-180
Silver City, NM 88061
(201) 527-8938
rubenescano@gmail.com